IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:25-cr-1 |
| v. | Hon. Rossie D. Alston, Jr. |
| MAMUD SESAY, | Sentencing Date: May 7, 2025 |
| *Defendant*. | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The defendant, Mamud Sesay, comes before the Court for sentencing after pleading guilty to a one-count Criminal Information, charging him with conspiracy to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846. ECF Nos. 27, 28. The defendant was identified as a significant source of supply of fentanyl pills for co-defendant Phillip Mosby. During the search of the defendant's residence, law enforcement found several thousand fentanyl pills in the defendant's bedroom, further confirming his status as a significant fentanyl dealer. The defendant further engaged in obstructionist behavior after he learned of his pending arrest. These facts, while very serious, are paired with reasons for optimism for the defendant's future rehabilitation.

As detailed below, the United States agrees with the Base Offense Level calculation, as well as the applicability of the two-point safety valve reduction and the three-point acceptance reduction. However, the United States does think a two-level enhancement for obstruction of justice applies in this case and objects to the lack of application of that enhancement. With the two-level obstruction enhancement applied, and a correctly applied Criminal History Category of I, the United States believes the correct Guidelines range in this case is 87–108 month. The United

States also believes that a sentence of 96 months is sufficient, but not greater than necessary, to take into account the factors set forth in 18 U.S.C. § 3553(a).

## I.    BACKGROUND

The instant case began with the investigation of two related defendants: Phillip Mosby and William McCoy.  Mosby and McCoy were identified as potential kilogram-level distributors of fentanyl pills in the DMV area.  Law enforcement conducted several controlled purchases from Mosby and McCoy, then executed several search warrants during their arrests on properties tied to them during the conspiracy period.  Both Mosby and McCoy were charged with conspiracy to distribute 400 grams or more of fentanyl, pled guilty to such charges, and were both sentenced to 120 months' imprisonment by this Court.  *See* Presentencing Report ("PSR") ¶¶ 10–11.

In reviewing the phones of Mosby seized during his arrest, law enforcement identified the defendant as a significant source of supply for Mosby, including supplying at least two of the controlled purchases done from Mosby and McCoy.  The defendant supplied the fentanyl pills for these two controlled purchases, *see* PSR ¶¶ 20–21, utilizing a phone number ending in -0155.  After discovering the defendant's supplier role, law enforcement started surveillance on the defendant's residence in the summer/fall of 2024 and noticed frequent short-term traffic to his residence consistent with drug distributions.  An arrest warrant for the defendant and a search warrant for his residence were both secured.  Law enforcement executed the search warrant for the defendant's residence on October 17, 2024 and found several thousand fentanyl pills in the defendant's bedroom.

The defendant was not in his residence during the execution of the search warrant.  As explained in more detail in the PSR, law enforcement secured a GPS location warrant for the defendant's -0155 phone number the same day as the execution of the search warrant.  PSR ¶ 32.

Again, this number was the same phone number used by the defendant to arrange fentanyl distributions with Mosby. *See id.* ¶¶ 20–21, 26–29 (laying out distributions between the defendant and Mosby). Over the next few days, law enforcement was unable to locate the defendant due to the imprecise location data from the defendant's phone.

On October 21, 2024, an attorney contacted the lead case agent to explain that the defendant was aware of the arrest warrant and was attempting to retain the attorney. The attorney stated the defendant would self-surrender on October 23, 2024. However, also on October 21, 2024, the data location from the defendant's -0155 number stopped being transmitted to law enforcement. Through cell phone toll analysis, law enforcement was able to identify a new phone number attributable to the defendant that went live the same day the location data stopped being transmitted from the defendant's old -0155 number. PSR ¶ 32.

The defendant later retained current counsel and self-surrendered on November 6, 2024. The defendant made his initial appearance in the Eastern District of Virginia on November 7, 2024. On January 30, 2025, the defendant appeared before the Court, waived indictment, and pled guilty to a one-count criminal information charging him with conspiracy to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Sentencing was set for May 7, 2025.

## II.    STANDARDS GOVERNING SENTENCING

Although the Supreme Court rendered the Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court still must "consult those Guidelines and take them into account when sentencing." *Id*. at 264. "[A] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in

[18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

When imposing a sentence that is "sufficient, but not greater than necessary," § 3553 requires a sentencing court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the Guidelines; (5) applicable policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense.

## III.   GUIDELINES CALCULATIONS AND OBJECTIONS

In accordance with United States Sentencing Guidelines ("U.S.S.G.") § 6A1.2 and Policy Statements and this Court's policy regarding Guidelines sentencing, the United States has reviewed the Probation Office's PSR prepared in this matter. The Base Offense Level was correctly calculated at 32, as the offense involved at least 1.2 kilograms but less than 4 kilograms of fentanyl. PSR ¶ 41. The defendant was correctly assessed a two-point reduction for safety valve eligibility under U.S.S.G. § 2D1.1(b)(18). *Id.* ¶ 42. The defendant was also correctly assessed a three-point reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), (b). *Id.* ¶¶ 48–49.

However, the United States does object to the failure to apply the two-point enhancement for obstruction of justice under U.S.S.G. § 3C1.1. U.S.S.G. § 3C1.1 provides for a two-point

enhancement if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede" the case and the obstructive conduct related to the defendant's offense of conviction or a closely related one. Among other examples of qualifying conducting the Commission provided, Application Note 4(D) lists "destroying . . . evidence that is material to an official investigation on judicial proceeding."

The term "material" is later defined in Application Note 6 as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." As the Fourth Circuit as stated, "[t]he threshold for materiality . . . is 'conspicuously low.'" *United States v. Gormley*, 201 F.3d 290, 294 (4th Cir. 2000) (citing *United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir. 1992)). Because the alleged obstruction was not contemporaneous to the defendant's arrest, the United States is not required to show that the alleged obstruction created a "material hinderance." *See* U.S.S.G. § 3C1.1, Application Note 6.

Here, there is no dispute that the -0155 phone number was material. The -0155 number was used by the defendant to communicate with Mosby about fentanyl transactions. *See* PSR ¶¶ 20–21, 26–29 (laying out distributions between the defendant and Mosby). It is obvious the phone could have had additional evidence of the exact crimes the defendant was convicted of, including other customers/co-conspirators, the scale of the offense, and other relevant evidence. Additionally, on the same exact day law enforcement was told the defendant was aware of the arrest warrant against him, the -0155 phone number stopped transmitting location data pursuant to the location warrant and the defendant activated a new phone. *See* PSR ¶ 32. There can only be one explanation for this pattern: the defendant destroyed or otherwise abandoned the -0155 phone when he learned of his pending arrest.

This Court has found the enhancement to apply even when the United States was unaware of the evidence the defendant attempted to destroy. In *United States v. Kamara*, the defendant told a co-conspirator during a recorded jail call subsequent to his arrest to "log back in and delete the whole account." 1:23-cr-149, ECF No. 82 at 4. The United States was never able to identify the specific account the defendant referred to there, but the materiality of the account was implied by the defendant's instructions. *See id.* at 9–10; *see also United States v. Ramey*, 24 F.3d 602, 609 (4th Cir. 1994), *judgment vacated on other grounds by United States v. Ramey*, 217 F.3d 842 (4th Cir. 2000). Based on this conduct, the Court applied the enhancement. *See* 1:23-cr-149, ECF No. 85.

The instant case far exceeds *Kamara*. The -0155 phone number was demonstrably material, as it was the phone number used by the defendant to arrange the fentanyl transactions underlying his conviction. The timing of the number's deactivation, coupled with the activation of a new phone the same day, proves the intent behind the action. Therefore, the two-point obstruction enhancement should apply. With that enhancement applied, the correct Total Offense Level in this case is 29. Coupled with a correctly calculated Criminal History Category of I, see PSR ¶ 91, the correct Guidelines range in this case is 87–108 months.

## IV.    A SENTENCE OF 96 MONTHS IS WARRANTED BASED UPON ALL OF THE SECTION 3553(a) FACTORS

A sentence of 96 months, approximately in the middle of the Guidelines, is amply supported by the factors set forth in 18 U.S.C. § 3553(a). Perhaps most importantly, the sentence adequately takes into account the relationship and distinctions between the defendant's case and Mosby and McCoy's cases. The sentence reflects the seriousness of the offense and the added seriousness of the defendant's obstructionist conduct. Finally, the sentence takes into account the defendant's personal history and characteristics, which provide reasons for optimism that the

recommended sentence is adequate to deter and rehabilitate the defendant.

A.    **Unwarranted Sentencing Disparities**

Both Mosby and McCoy received sentences of 120 months, based in large part on certain qualifying felonies that made both ineligible for safety valve considerations.  Mosby faced a Criminal History Category of III, *see* ECF No. 1:24-cr-131, ECF No. 48 at 2, while McCoy faced a Criminal History Category of IV, *see* ECF No. 1:24-cr-135, ECF No. 45 at 2.  The proper sentence for the defendant should certainly take into account his lack of significant criminal history compared to Mosby and McCoy and is a factor that would support a lower sentence relative to Mosby and McCoy.

However, there are also aggravating factors relevant to Mosby and McCoy that pull in the opposite direction.  The defendant is assessed a slightly higher Base Offense Level of 32, as the United States was able to find evidence of the scale of the defendant's drug distribution activity beyond that of Mosby and McCoy.  Additionally, the relevant sentence must take into account the defendant's distinct obstructionist behavior as an aggravating factor.  If law enforcement was able to locate the defendant's destroyed phone, it very well may have uncovered additional evidence of the scale of the defendant's activities.  Finally, the defendant's role as a supplier to Mosby and McCoy's activities should also be taken into account, as, generally, individuals higher in the distribution chain should receive proportionally higher sentences.

B.    **Nature and Seriousness of the Offense**

The nature and seriousness of the offense should not be overlooked.  The Court is aware of the statistics on fentanyl-related deaths in Virginia, as well as fentanyl's prominence in the opioid crisis within the United States.  However, these statistics do not fully capture the distinguishing qualities the distribution of fentanyl presents compared to historical drug

distribution. The distribution of fentanyl today does not resemble the drug trafficking organizations ("DTOs") of yesterday. Fentanyl is incredibly cheap to purchase, it is cheap to produce, and it is relatively straightforward to distribute. Because of these dynamics, fentanyl traffickers today do not need the same level of organization, nor the same number of participants, to distribute large quantities of the drug.

On the surface, the conspiracy entered into by the defendant, Mosby, and McCoy does not look like the DTOs of yesterday. However, the potential impact to the community they had is far beyond what yesterday's street dealers could dream of. The Drug Enforcement Administration's laboratories have found that approximately 7 out of every 10 fentanyl pills seized contain a lethal dose of fentanyl.[1] The approximately 12,000 pills in this case directly attributable to the defendant was more than enough to put a potentially lethal fentanyl pill in the hands of every attendant of a max capacity George Mason basketball game.[2] Historically, only a large-scale DTO could rival the community impact that was potentially present in this case.

As shown in the PSR, the defendant's distributions did not just end up in the hands of law enforcement. Those pills entered into the hands of members of the DMV community. Had the thousands of pills in the defendant's residence not been seized, they would have been further distributed, causing a truly unknown level of harm. That harm should not be lost within the unfortunate, but frequent, number of cases the Court sees with thousands of fentanyl pills.

Added onto this harm, the defendant destroyed relevant evidence with the intent to obscure his behavior. The United States in no way suggests the defendant is not now taking responsibility

---

[1] One Pill Can Kill, Drug Enforcement Administration, https://www.dea.gov/onepill (last accessed Oct. 1, 2024).

[2] EagleBank Arena, Wikipedia, https://en.wikipedia.org/wiki/EagleBank_Arena (last accessed Oct. 1, 2024).

for his actions.  However, the initial impulse to obstruct is certainly an aggravating factor that is relevant to general deterrence principles and should be taken into account in crafting an appropriate sentence.

### C.    History and Characteristics of the Defendant/Specific Deterrence

The defendant comes before the Court as a 36-year-old man who is certainly old enough to know better and to have better judgment than displayed in this case.  The defendant does seem to have had several run-ins with law enforcement, but most of those offenses were dropped by the relevant authorities.  *See* PSR ¶¶ 52–65.  Therefore, the current offense seems more like a serious aberration in judgment and not a gradual escalation of drug-involved criminal behavior often seen by the Court.  The United States' recommendation of 96 months' imprisonment takes this aberration into account, which will hopefully provide an adequate specific deterrent to the defendant compared to others.

The PSR also notes reasons for optimism for the defendant's future contributions to the community after his sentence is completed.  The defendant seems to have come from a loving, supporting family and he does not seem to face any addiction issues that may derail his rehabilitation.  PSR ¶¶ 66–71, 83–84.  Regarding his education, it seems the defendant may not have a high school diploma due to lack of interest in formal schooling at the time.[3]  PSR ¶¶ 85–86.  However, with his family ties and lack of addiction issues, the United States is hopeful that the defendant would respond well now to educational opportunities provided by the Bureau of Prisons.  Finally, the defendant may also be in need of specific medical treatment regarding his leg, which recently suffered a serious injury.  *See* PSR ¶¶ 73–81.  Therefore, the United States

---

[3] The defendant reports that he has graduated from high school, but correspondence from his high school suggests he may have dropped out in the 10th grade. *See* PSR ¶ 85.

would recommend and support any location designations or program recommendations the Court finds proper to assist the defendant in these areas, with the goal of proper rehabilitation while incarcerated.

## V.    CONCLUSION

While there are reasons for optimism for the defendant's rehabilitation while incarcerated, the defendant's conduct was still incredibly serious and deserves a significant sanction.  Therefore, the United States respectfully submits that a sentence of 96 months is sufficient, and not greater than necessary, to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Erik S. Siebert
U.S. Attorney

Date:  May 1, 2025             By: _____/s/_____
                                   Christopher M. Carter
                                   Special Assistant United States Attorney (LT)
                                   Catherine Rosenberg
                                   Assistant United States Attorney
                                   Office of the United States Attorney
                                   2100 Jamieson Avenue
                                   Alexandria, Virginia 22314
                                   Phone: (703) 299-3700
                                   Fax: (703) 299-3980
                                   Christopher.carter2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 1, 2025, I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of

record.  I also certify that an electronic copy was emailed to the Probation Office at:

Emerita Ayala
United States Probation Officer
401 Courthouse Square, 3rd Floor
Alexandria, Virginia 22314
Emerita_ayala@vaep.uscourts.gov

By:  _____/s/_____
Christopher M. Carter
Special Assistant United States Attorney (LT)
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3947
Fax: (703) 299-3980
Christopher.carter2@usdoj.gov